1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10
11
12
13

| | |
|---|---|
| TERRI BROOKS-JOSEPH,<br><br>           Plaintiff,<br><br>     v.<br><br>CITY OF SEATTLE, *et al.*,<br><br>           Defendants. | Case No. C22-1078RSL<br><br>ORDER GRANTING<br>DEFENDANTS' MOTION<br>FOR SUMMARY<br>JUDGMENT |

14
15
16
17

     This matter comes before the Court on defendants City of Seattle and Seattle City Light's "Motion for Summary Judgment" (Dkt. # 18) and "Motion to Compel Re. Package of Information Evidencing Plaintiff's Whistleblowing Claim" (Dkt. # 29). The Court, having reviewed the submissions of the parties and the remainder of the record, finds as follows:

18

**I.    Background**

19
20
21
22
23
24
25
26
27
28

     In October 2019, plaintiff Teri Brooks-Joseph, a 57-year-old Black woman, was hired as a Term-Limited Temporary ("TLT") IT Business Analyst with the City of Seattle Information Technology Department ("ITD"). *See* Dkt. # 22 at 5; Dkt. # 35 at 1. This was an at-will position with a duration of "up to three years." *Id.* Plaintiff's original hiring manager was Sharon Hunter. *See id.* However, at some point between plaintiff's hire date in October and December 16, 2019, Signe Olausen became plaintiff's manager. *See* Dkt. # 36 at 185. Plaintiff appears to have excelled in her role at ITD – she received an "exceeds expectations" evaluation from Ms. Olausen in her January 2020 performance review, *see id.* at 185-90, as well as a "There's No 'I' in Team" award "in recognition of [her] valuable contributions to Seattle IT," *id.* at 183. On January 24, 2020, Ms. Olausen scheduled a meeting with human resources advisor Seini Puloka

to "help promote [plaintiff] to a permanent senior level position" in light of plaintiff's "demonstrated skill at [business analyst] work and deep experience in information technology." Dkt. # 41 at 1-2; Dkt. # 36 at 191.

Following this conversation, plaintiff sought to apply for a permanent position that was open under her former manager, Sharon Hunter. *See* Dkt. # 41 at 1. Plaintiff claims that she was denied the opportunity to interview for the position, even after human resources intervened and informed Hunter that plaintiff was to be interviewed. *See id.* at 1-2.[1]

Plaintiff's contract with ITD was terminated in November 2020. *See* Dkt. # 35 at 2; Dkt. # 18 at 2. However, on November 24, 2020, plaintiff was offered a contract position with Seattle City Light ("SCL") in the position of TLT Strategic Advisor 1. Dkt. # 21 at 6. Plaintiff's offer letter explained that she would "be responsible for supporting a wide range of activities throughout the lifecycle of the Fusion project. This entails ensuring business needs are met by Seattle IT in project delivery, accurate documentation is captured for future audit and control purposes, and most importantly, requirements and therefore business benefits are met by the project." *Id.* The assignment was "expected to end on September 16th, 2022," however, the offer letter cautioned that it "may end at any time." *Id.* The position was "covered by a collective bargaining agreement represented by WSCCCE Local 21-CL StratAdvrs," however, plaintiff was informed in her offer letter that she "serve[d] at the discretion of the appointing authority." *Id.*

In June 2020, plaintiff attended a meeting in which she alleges that her colleagues on the Fusion Project criticized one of the project managers in front of a client. *See* Dkt. # 36 at 141-42. Plaintiff further alleges that at a later meeting, she reprimanded her colleagues for their unprofessional behavior. *Id.* at 142-43; Dkt. # 1 at 7. Another project manager on the Fusion Project, Susan Davidson, allegedly informed plaintiff that she had been hostile to her peers. Dkt.

---

[1] Plaintiff offers a declaration from Puloka stating that she "was *informed* that [plaintiff] was denied an opportunity" to apply for the role. Dkt. # 41 at 1 (emphasis added). The declaration does not indicate that Puloka has any personal knowledge regarding the denial of the opportunity to interview. *Id.*; *see* Fed. R. Civ. P. 56(c).

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 2

1  # 1 at 7. Following this incident, plaintiff heard one of the colleagues who had been criticizing

2  the project manager in front of the client mutter "I don't take orders from Black people." *Id.* At

3  her deposition, plaintiff testified that the employee later apologized. *See* Dkt. # 19 at 25.

4        Plaintiff further asserts that on July 17, 2020, she had a meeting with Organizational

5  Change Management ("OCM") Manager Lourdes Podwall in which Ms. Podwall informed

6  plaintiff that, with regard to the Fusion project, "SCL had reorganized teams and she would no

7  longer lead and/or make decisions about the Occupational Change Management team (OCM)."

8  Dkt. # 19 at 39. Plaintiff alleges that prior to this conversation, she had been acting as the

9  interim team lead. *Id.* Plaintiff states that Ms. Podwall "informed her that she could no longer be

10  the 'face of the team,'" *id.*, as Nick Cherf, a white man, was to be appointed as the OCM Lead

11  for the Fusion Project, Dkt. # 35 at 3.

12        In March 2021, plaintiff reached out to her Union Steward, Monica Jones, and the then-

13  president of her union, Ed Hill, to air her "complaints regarding being discriminated against,

14  ostracized in team meetings, constantly insulted and bullied by her management team," Dkt.

15  # 38, as well as her concern that she was "working in several job classifications different than

16  the one she was hired into," Dkt. # 39. These concerns were reported to and funneled through

17  several different human resources departments, *see* Dkt. # 38 at 2-3; Dkt. # 36 at 250-53, 263.

18  Ultimately, the City's Human Resources Investigative Unit ("HRIU") commenced an

19  investigation in April 2021 into plaintiff's concerns that Sharon Hunter and others

20  "discriminated against [plaintiff] based on [plaintiff's] age, race, and/or retaliated against

21  [plaintiff] by other acts." Dkt. # 36 at 150; *see* Dkt. # 19 at 38-43. Specifically, HRIU

22  investigated plaintiff's allegations that she had been removed from her role as team lead based

23  on racial discrimination, that her work product had been stolen and given to other team

24  members, and that Sharon Hunter had told a manager to malign plaintiff in plaintiff's

25  employment file. Dkt. # 19 at 38-41. HRIU's investigation report concluded that the evidence

26  available did not support plaintiff's allegations. *Id.*

27        Also in March 2021, Susan Davidson, a project manager on the Fusion Project, sent an

28  email to plaintiff assigning her certain tasks to complete. Dkt. # 21 at 19-20. Plaintiff stated that

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 3

1  she could not perform the assigned work as it was outside what plaintiff understood her scope of
2  work to be, and further indicated that she would only do the work requested if she were
3  promoted to a Project Management General Lead position. *Id.* at 18. Davidson responded,
4  acknowledging plaintiff's prior contributions to the project and explaining that "[t]his is a
5  challenging project and we need everyone to roll up their sleeves." *Id.* at 17. Plaintiff responded
6  that she "graciously declines" Davidson's request for assistance. *Id.* at 16. Following this
7  exchange, plaintiff's manager, Britt Luzzi, and Director of Customer Operations, Marcus
8  Jackson, approached Seattle City Light's People & Culture Business Partner Manager, Aldo
9  Nardiello, to "discuss some performance concerns they were having with [p]laintiff." *Id.* at 2-3.
10 Nardiello "advised they counsel [p]laintiff on workplace expectations, as opposed to ending her
11 assignment." *Id.*

12      In May 2021, Susan Davidson emailed plaintiff outlining Davidson's "expectations of
13 [plaintiff's] time" in an effort to determine if plaintiff had "time available to help with" other
14 project or program activities. Dkt. # 19 at 72-73. Plaintiff responded that she "work[s] daily to
15 support the team and to complete [her] [Business Analyst] responsibilities" and asked Davidson
16 to "explicate further on what is meant by 'you are trying to determine if I have time available to
17 help with any number of project or program activities.'" *Id.* at 72. Plaintiff subsequently
18 followed up with a "status report." *Id.* After thanking plaintiff for her status report, Davidson
19 inquired "[f]or things that you create, such as the business plan referenced in your report, who is
20 your audience?" *Id.* at 71-72. Plaintiff responded, "I will not be sending you my business plan."
21 *Id.* at 71. Plaintiff's manager, Britt Luzzi, responded to plaintiff's refusal noting that "[e]ither all
22 work is a project need and therefore should be shared, vetted and all proper credit given to you
23 as the author, or the work is not needed by the project and therefore city time shouldn't be used
24 to build private work." *Id.* at 71.

25      On July 1, 2021, Davidson forwarded a May 10, 2021 email to Plaintiff, asking her to
26 update project documentation to ensure consistent file names. *Id.* at 83-84. Plaintiff forwarded
27 Davidson's request to Thao Nguyen, Project Delivery Manager, stating that Davidson's delay in
28 sending her the request was "pure negligence." *Id.* at 81-82. In response to Nguyen's email

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 4

1   seeking clarification, plaintiff stated that she believes "Susan [Davidson] needs further training

2   and not further document updates." *Id.* at 80-81. Plaintiff asserted that the requested information

3   "is already there. We will need to teach Susan to read it by the 9th." *Id.* at 81.

4        On July 2, 2021, Davidson sent plaintiff a request to reformat some data. Dkt. # 21 at 24-

5   26. Plaintiff refused, and referred a colleague of hers instead. *Id.* at 24. Plaintiff's manager, Britt

6   Luzzi, chimed in on the email thread and asked that plaintiff give the request priority. *Id.* at 23-

7   24. Plaintiff again refused. *Id.* at 23. Luzzi responded that they would address the issue further

8   after the weekend. *Id.* Plaintiff replied that the information had already been provided and that

9   they would need to "teach Susan [Davidson] how to read it." *Id.* at 22. Luzzi removed plaintiff's

10  colleagues from the email thread and added Marcus Jackson. *Id.* Luzzi indicated to plaintiff that

11  "this type of response is disrespectful to another employee" and requested that plaintiff "[p]lease

12  take a moment in future and do not send an email to the team with negative connotations

13  towards another person." *Id.* Luzzi further noted that treating others with "kindness and respect"

14  was "something we've talked about on previous occasions and my guidance toward following

15  workplace expectations stands." *Id.*

16       Following this email exchange, Luzzi and Jackson met with Nardiello, who "agreed that

17  [p]laintiff's professionalism and communication had not improved with counseling, and that the

18  emails demonstrated conduct that were inconsistent with SCL Workplace expectations: Mutual

19  Respect and Teamwork." *Id.* at 4. Nardiello states that "considering [p]laintiff's inappropriate

20  comments, as well as the fact that her assigned project was coming to an end, SCL made the

21  decision to end [p]laintiff's temporary assignment, effective July 16, 2021." *Id.*

22       On August 8, 2022, plaintiff filed an employment discrimination suit against the City of

23  Seattle and Seattle City Light (collectively, "City") and individual city employees Susan

24  Davidson, Lourdes Podwall, Britt Luzzi, and Sharon Hunter, along with their respective "John

25  Doe" spouses (collectively "individual defendants"). *See* Dkt. # 1. She asserts nine causes of

26  action, including (1) racial discrimination in violation of Title VII of the Civil Rights Act, as

27  amended; (2) racial discrimination in violation of the Washington Law Against Discrimination

28  ("WLAD"); (3) gender discrimination in violation of Title VII; (4) gender discrimination in

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 5

1   violation of the WLAD; (5) violations of the Washington State Whistleblower Protection Act, as

2   well as the City of Seattle's whistleblower protections; (6) age discrimination in violation of the

3   WLAD; (7) age discrimination in violation of the Age Discrimination in Employment Act

4   ("ADEA"); (8) negligent supervision and negligent retention; and (9) wrongful discharge. *Id.*

5        On August 8, 2023, following the close of discovery, defendants City of Seattle and

6   Seattle City Light filed a motion for summary judgment, asking that the Court dismiss all of

7   plaintiff's claims. *See* Dkt. # 18.

8       **II.**    **Legal Standard**

9        Summary judgment is appropriate when, viewing the facts in the light most favorable to

10  the nonmoving party, there is no genuine issue of material fact that would preclude the entry of

11  judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial

12  responsibility of informing the district court of the basis for its motion," *Celotex Corp. v.*

13  *Catrett*, 477 U.S. 317, 323 (1986), and "citing to particular parts of materials in the record," Fed.

14  R. Civ. P. 56(c), that show the absence of a genuine issue of material fact. Once the moving

15  party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to

16  designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S.

17  at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . .

18  and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of*

19  *Carson*, 888 F.3d 445, 450 (9th Cir. 2018).

20       The Supreme Court has explained that "the plain language of Rule 56(c) mandates the

21  entry of summary judgment . . . against a party who fails to make a showing sufficient to

22  establish the existence of an element essential to that party's case, and on which that party will

23  bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In that case, "the burden on the

24  moving party may be discharged by 'showing'—that is, pointing out to the district court—that

25  there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

26       Accordingly, while plaintiff is correct that she is not required to "prove every element" of

27  her claims to survive summary judgment, *see* Dkt. # 35 at 6, 10, she must at least "make a

28  sufficient showing on an essential element of her case with respect to which she has the burden

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 6

of proof," *Celotex*, 477 U.S. at 323.[2] *See Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006) (affirming district court's grant of summary judgment to defendants where plaintiffs failed to make a prima facie case of disparate treatment); *Leong v. Potter*, 347 F.3d 1117, 1125 (9th Cir.2003) (holding that the district court properly granted summary judgment where plaintiff could not demonstrate a prima facie case of discrimination).

### III.   Analysis

#### A. Discrimination Claims

Plaintiff asserts a bevy of discrimination claims against defendants, including disparate treatment and hostile work environment. Plaintiff contends that the alleged discrimination was based on (1) her race, in violation of Title VII and the Washington Law Against Discrimination ("WLAD"); (2) her gender, in violation of Title VII and WLAD; and (3) her age, in violation of the Age Discrimination in Employment Act ("ADEA") and WLAD.[3]

---

[2] Confusingly, plaintiff cites to *N.L.R.B. v. Transportation Mgmt. Corp.*, 462 U.S. 393 (1983) and *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977), apparently for the proposition that a plaintiff "does not require clear and convincing proof" to withstand a motion for summary judgment. *See* Dkt. # 35 at 6, 10. The cited cases do not deal with the summary judgment standard, but the burden of proof for claims brought under § 7(c) of the Administrative Procedure Act – a statute not at issue in this case.

[3] The Court notes that under Title VII, a complainant must file charges with the EEOC within 180 days of the alleged discrimination, or 300 days if the complainant initially instituted proceedings with a state or local agency. 42 U.S.C. § 2000e–5(e); *see Green v. L.A. Cnty. Superintendent of Sch.*, 883 F.2d 1472, 1473 (9th Cir. 1989). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1061 (9th Cir. 2002). Acts that occurred outside the limitations period cannot evidence discrimination unless they are part of a hostile work environment, which "is ambient and persistent, and . . . continues to exist between overt manifestations." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 444–45 (9th Cir. 2017) (quoting *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1108 n.1 (9th Cir. 1998)); *see also RK Ventures, Inc.*, 307 F.3d at 1061 n.13. This framework is the same for claims under the ADEA. *See* U.S.C. § 626(d).

Here, plaintiff asserts that she "filed a charge against the Defendants with the Equal Employment Opportunity Commission (EEOC) on April 27, 2022." Dkt. # 1 at 4. Accordingly, it would appear that – excepting plaintiff's hostile workplace claims – any claim of discrimination occurring prior to January 27, 2022 (ninety days prior to plaintiff filing her charge with the EEOC) is time-barred. However, because (1) neither party has raised this issue in its briefing; (2) "failure to file an EEOC charge within the prescribed 300–day period is not a jurisdictional bar, but it is treated as a violation of a statute of

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 7

**i.  Disparate Treatment**

The Court first addresses plaintiff's claims of disparate treatment under Title VII, ADEA, and WLAD.

**1.  Title VII Disparate Treatment Claims**

Title VII makes it an unlawful employment practice to "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Plaintiffs may demonstrate discrimination under a theory of disparate treatment. *See Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012). Disparate treatment occurs "where an employer has treated a particular person less favorably than others because of a protected trait." *Id.* "Failure to promote is a common manifestation of disparate treatment." *See McGinnis v. GTE Serv. Corp.*, 360 F.3d 1103, 1121-22 (9th Cir. 2004). As is failure to hire. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

In responding to a summary judgment motion in a Title VII disparate treatment case, a plaintiff may produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant's decision, or alternatively may establish a prima facie case under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*. *See McGinest*, 360 F.3d at 1122.

Under the *McDonnell Douglas* test:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must

limitations," *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000); and (3) WLAD requires that "claims must be brought within three years under the general three-year statute of limitations for personal injury actions. RCW 4.16.080(2)," *Antonius v. King Cnty.*, 153 Wn. 2d 256, 261-62 (2004), a statute of limitation that encompasses the totality of plaintiff's period of employment with defendants, the Court will address plaintiff's claims on the merits.

> then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations and quotation marks omitted).

In order to prove a prima facie claim of Title VII discrimination based on disparate treatment and satisfy the first step of the *McDonnell Douglas* test, the plaintiff must show that: (a) she belonged to a protected class; (b) she was qualified for her job; (c) she was subjected to an adverse employment action; and (d) similarly situated employees not in her protected class received more favorable treatment. *Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006) (citing *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 818 (9th Cir. 2002)).[4] At summary judgment, the degree of proof necessary to establish a prima facie case is "minimal and does not even need to rise to the level of a preponderance of the evidence." *Lyons*, 307 F.3d at 1112 (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

"If established, the prima facie case creates a rebuttable presumption that the employer unlawfully discriminated against the plaintiff." *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005). "The burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action." *Id.* If the employer meets this burden, the presumption of unlawful discrimination "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). The plaintiff then must produce sufficient evidence to raise a genuine issue of material fact as to whether the employer's proffered

---

[4] "It is widely recognized that the [*McDonnell Douglas*] test is a flexible one and the prima facie case described [therein] was 'not necessarily applicable in every respect to differing factual situations.'" *McGinest*, 360 F.3d at 1122 n.17.

Accordingly, where the disparate impact claim alleges failure to promote, the Ninth Circuit has described the prima facie case as requiring a showing that "(1) he belongs to a statutorily protected class, (2) he applied for and was qualified for an available position, (3) he was rejected despite his qualifications, and (4) after the rejection, the position remained available and the employer continued to review applicants possessing comparable qualifications." *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002).

1  nondiscriminatory reason is merely a pretext for discrimination. *Coleman v. Quaker Oats Co.*,
2  232 F.3d 1271, 1282 (9th Cir.2000). "The plaintiff may show pretext either (1) by showing that
3  unlawful discrimination more likely motivated the employer, or (2) by showing that the
4  employer's proffered explanation is unworthy of credence because it is inconsistent or otherwise
5  not believable." *Dominguez-Curry*, 424 F.3d at 1037 (citing *Godwin v. Hunt Wesson, Inc.*, 150
6  F.3d 1217, 1220-22 (9th Cir. 1998)).

### 2.  ADEA Disparate Treatment Claims

8        The ADEA makes it unlawful "to fail or refuse to hire or to discharge any individual or
9  otherwise discriminate against any individual with respect to his compensation, terms,
10  conditions, or privileges of employment, because of such individual's age." 29 U.S.C.
11  § 623(a)(1). This prohibition applies to "individuals who are at least 40 years of age." 29 U.S.C.
12  § 631(a). A plaintiff alleging discrimination under the ADEA may proceed under a theory of
13  disparate treatment. *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990). "Proof of
14  disparate treatment requires a showing that the employer treats some people less favorably than
15  others because of their age." *Id.* (citation omitted).

16        Disparate treatment claims under the ADEA are also subject to the *McDonnell Douglas*
17  burden-shifting framework. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir.
18  2008). To establish a prima facie case of age discrimination, the plaintiff must demonstrate that
19  "he was (1) at least forty years old, (2) performing his job satisfactorily, (3) [subject to an
20  adverse employment action], and (4) either replaced by substantially younger employees with
21  equal or inferior qualifications or discharged under circumstances otherwise 'giving rise to an
22  inference of age discrimination.'" *Id.* (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271,
23  1281 (9th Cir. 2000)).[5]

24

25

26        [5] Similarly, "[i]n a failure-to-promote case, a plaintiff may establish a prima facie case of
   discrimination in violation of the ADEA by producing evidence that he or she was (1) at least
27  forty years old, (2) qualified for the position for which an application was submitted, (3) denied
   the position, and (4) the promotion was given to a substantially younger person." *Shelley v.*
28  *Geren*, 666 F.3d 599, 608 (9th Cir. 2012).

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 10

### 3.  WLAD Disparate Treatment Claims

WLAD prohibits employers from refusing to hire, discharging, or discriminating "against any person in compensation or in other terms or conditions of employment" on the basis of a protected characteristic, including age, gender, and race. RCW 49.60.180. A plaintiff may establish a prima facie case of disparate treatment under WLAD either by offering direct evidence of an employer's discriminatory intent, or by satisfying the *McDonnell Douglas* burden-shifting test. *Alonso v. Qwest Commc'ns Co., LLC*, 178 Wn. App. 734, 744 (2013) (citing *Kastanis v. Educ. Emps.' Credit Union*, 122 Wn. 2d 483, 491 (1993)); *see also Fulton v. State, Dep't of Soc. & Health Servs.*, 169 Wn. App. 137, 148 (2012) ("When evaluating summary judgment motions in employment discrimination cases under WLAD, Washington courts have largely adopted the federal burden-shifting scheme announced in *McDonnell Douglas Corp. v. Green . . .*"). "When an employee makes out a claim of disparate treatment under the WLAD, like Title VII, the employer's action is unlawful unless the employer has a valid justification." *Blackburn v. State*, 186 Wash. 2d 250, 258 (2016).

A plaintiff must meet the prima facie requirements for disparate treatment outlined in the Title VII cases to demonstrate a prima facie case under WLAD. *See Marquis v. City of Spokane*, 130 Wn. 2d 97, 113 (1996) (explaining that a plaintiff must show "(1) membership in a protected class; (2) the plaintiff was similarly situated to [non-members of her protected class], i.e., that he or she was qualified for the position applied for or was performing substantially equal work; (3) because of plaintiff's [membership in a protected class] he or she was treated differently than [non-members of the protected class]").

More specifically, to demonstrate disparate treatment on a theory of discriminatory discharge, the "plaintiff must make a prima facie case of discrimination by showing that (1) she was within a statutorily protected class, (2) she was discharged by the defendant, (3) she was doing satisfactory work, and (4) after her discharge, the position remained open and the

1  employer continued to seek applicants with qualifications similar to the plaintiff." *Mikkelsen v.*
2  *Pub. Util. Dist. No. 1 of Kittitas Cnty.*, 189 Wn. 2d 516, 527 (2017).

3  To demonstrate disparate treatment on a theory of discriminatory hiring or failure to
4  promote, the plaintiff must show "(i) that [the plaintiff] belongs to a [a protected class]; (ii) that
5  he [or she] applied and was qualified for a job for which the employer was seeking applicants;
6  (iii) that, despite his [or her] qualifications, he [or she] was rejected; and (iv) that, after his [or
7  her] rejection, the position remained open and the employer continued to seek applicants from
8  persons of complainant's qualifications." *Hill v. BCTI Income Fund-I*, 144 Wn. 2d 172, 181
9  (2001) (quoting *McDonnell Douglas*, 411 U.S. at 802).

10  To defeat an employer's motion for summary judgment in an employment discrimination
11  case, an employee "must do more than express an opinion or make conclusory statements."
12  *Hiatt v. Walker Chevrolet Co.*, 120 Wn. 2d 57, 66 (1992); *see also Marquis*, 130 Wn. 2d at 105.
13  The employee must establish specific and material facts to support each element of her prima
14  facie case. *Hiatt*, 120 Wn.2d at 66. Unless a prima facie case of discrimination is set forth, the
15  defendant is entitled to prompt judgment as a matter of law. *Kastanis*, 122 Wn. 2d at 490.

16  **4.  Disparate Treatment Analysis**

17  Here, plaintiff appears to allege that she suffered disparate treatment because she was (1)
18  not hired for the permanent positions she applied to; (2) not promoted; (3) removed from her
19  position as interim project lead; and (4) unfairly discharged from her position. *See* Dkt. # 35 at
20  11. As plaintiff does not offer direct evidence of defendant's discriminatory intent, the Court
21  analyzes her claims under the *McDonnell Douglas* test.

22  Addressing plaintiff's claims of discriminatory hiring and failure to promote first, the
23  Court finds that plaintiff has failed to state a prima facie case for either claim. While plaintiff
24  has established that she was a member of a protected class with regard to her race, age, and
25  gender, she has not made any effort to demonstrate that she was qualified for the positions to
26  which she applied, a required showing for failure to hire or failure to promote disparate
27  treatment claim under the WLAD, Title VII, or ADEA. *See* Dkt. # 35 at 9 (offering the
28  conclusory statement that "[d]espite having the training, education and expertise, Plaintiff was

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 12

1  not hired for any of the[] positions" she applied to). Instead, plaintiff merely provides the Court

2  with a list of job openings within the City of Seattle to which she applied. *See* Dkt. # 36 at 34-

3  36.[6] Plaintiff makes no effort to describe the job requirements of these various positions, nor to

4  compare her own qualifications against these requirements.[7]

5        The WLAD, Title VII, and ADEA also require a plaintiff to demonstrate as part of her

6  prima facie case that "after his [or her] rejection, the position remained open and the employer

7  continued to seek applicants from persons of complainant's qualifications." *McDonnell*

8  *Douglas*, 411 U.S. at 802. Here, plaintiff has offered no evidence indicating whether the

9  positions remained open after plaintiff's application was rejected or who was ultimately hired

10 into the roles to which she applied. While defendants offer data regarding the demographics of

11 the individuals hired into the positions plaintiff applied for, *see* Dkt. # 21; Dkt. # 22, it is

12 plaintiff's burden to put forward evidence to support her prima facie case. *See, e.g.*, *Carderella*

13 *v. Napolitano*, 471 F. App'x 681, 682-83 (9th Cir. 2012) (affirming district court's finding that

14 plaintiff failed to establish a prima facie case of employment discrimination where plaintiff

15 acknowledged that he had "no information regarding the race or national origin of the

16 individuals ultimately selected for the vacant . . . positions").[8]

17

18        [6] Notably, plaintiff asserts that "there were 18 positions for which the Plaintiff either applied

19 and/or was qualified for," Dkt. # 35 at 9, however the documents she provides the Court in her cited

20 exhibit shows only 13 positions, four of which she applied for prior to being hired by the City of Seattle in October 2019, *see* Dkt. # 36 at 34-39.

21        [7] Plaintiff also argues that she was "blocked from applying and interviewing for advanced

22 positions" by Britt Luzzi and Sharon Hunter. *See* Dkt. # 35 at 4. Setting aside the fact that these

23 conclusory assertions are insufficient to withstand a motion for summary judgement, *see Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (explaining that conclusory statements

24 unsupported by the record are insufficient to defeat a motion for summary judgment), the Court notes

25 that plaintiff has failed to either allege or produce any evidence indicating that Luzzi and Hunter's purported actions were taken as a result of discrimination against plaintiff on the basis of her

26 membership in a protected class.

27        [8] The Court notes that defendant has put forward evidence showing that – for the positions

28 defendants identified plaintiff as having applied to – seven out of the ten successful candidates were women, six out of the ten successful candidates were non-white, and seven out of the ten successful candidates were over 40 years old. Dkt. # 18 at 3-4. Defendants further assert that plaintiff was not

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 13

1   As plaintiff has failed to meet her burden of demonstrating a prima facie case, the Court

2   finds that there is no genuine issue of material fact as to plaintiff's hiring discrimination and

3   failure to promote claims.[9] Summary judgment on these claims is granted to defendants.

4   In addition to her failure to promote and hiring discrimination claims, plaintiff appears to

5   suggest that she also faced disparate treatment when (1) she was removed from her role as

6   interim project lead on the Fusion project and replaced by Nick Cherf, a younger white man, *see*

7   Dkt. # 35 at 2-3; and (2) when she was discharged, *see id.* at 11.

8   First addressing plaintiff's removal from the interim project lead position, the Court finds

9   that the first two elements of plaintiff's prima facie case are met. What is less clear is whether

10  plaintiff was "subjected to an adverse employment action." Based on the investigation

11  conducted by HRIU, plaintiff "acted as an informal Lead in the absence of the appointed project

12  Lead. There is no evidence that she was formally placed or replaced in the position." Dkt. # 19

13  at 40. However, the Ninth Circuit has held that "[t]ransfers of job duties . . . if proven, would

14  constitute 'adverse employment decisions.'" *Ray v. Henderson*, 217 F.3d 1234 (9th Cir. 2000)

15  (quoting *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)). Given that the Court must

16

17  ─────────────────

18  interviewed for these roles because "[p]laintiff did not meet minimal qualifications and/or there were stronger applicants." *Id.* at 4.

19  [9] Plaintiff's attempts to create a genuine issue of fact are unavailing. Plaintiff cites to the
20  declarations of former Union President Ed Hill and Union Representative Monica Jones for the
    proposition that "there is conflicting witness testimony as to whether or not the Plaintiff was
21  discriminated against, whether she was denied permanent positions as a result of that discrimination and
    whether she was eventually terminated because of discrimination." Dkt. # 35 at 11. Hill's only
22  comments with regard to plaintiff's failure to hire and failure to promote claims were that he
    "encouraged her to apply for lead positions since she was always doing the work. For some reason, she
23  was not deemed qualified to apply." Dkt. # 39 at 3. Jones's only comments were that "Ms. Brooks-
    Joseph was not properly compensated and was denied opportunities to apply for various permanent
24  positions, higher paying positions, and higher paying TLT management positions." Dkt. # 38 at 4.
    Putting aside the evidentiary issue of whether Ms. Jones and Mr. Hill have the required personal
25  knowledge to opine on defendant's hiring practices, *see* Fed. R. Evid. 603; Fed. R. Civ. P. 56(c)(4),
    neither of these conclusory statements creates an issue of fact as to whether plaintiff was qualified for
26  the positions to which she applied, or what happened with the job searches for those positions after she
    was rejected – both of which are required to state a prima facie case.

27

28

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 14

1  view the facts in the light most favorable to the plaintiff, it concludes that there is at least a

2  material issue of fact as to whether plaintiff was subject to an adverse employment action.

3  Finally, although defendants do not dispute that Nick Cherf was not a member of plaintiff's

4  protected classes (plaintiff asserts that Cherf was a "younger" "white" "male," Dkt. # 35 at 3),

5  plaintiff has failed to demonstrate that he was "similarly situated." *See Moran*, 447 F.3d at 755

6  (explaining that plaintiff must demonstrate they are "similarly situated in all material respects"

7  to employees they allege are receiving favorable treatment). Indeed, in the myriad declarations

8  plaintiff submitted to the Court, she identifies Cherf as the "OCM Lead," *see* Dkt. # 36 at 53,

9  while her own title was "TLT Strategic Advisor 1," Dkt. # 21 at 6. As plaintiff has failed to

10 demonstrate that Cherf was "similarly situated," the Court finds that plaintiff has failed to

11 establish a prima facie case of disparate treatment.[10] Summary judgment on this claim is granted

12 to defendants.

13       Finally, as to plaintiff's wrongful discharge claim, the Court similarly finds that plaintiff

14 has not established a prima facie case.[11] As an initial matter, plaintiff has not shown that

15 following her discharge, the position remained open and the employer continued to seek

16 applicants with qualifications similar to the plaintiff. *McDonnell Douglas*, 411 U.S at 802.

17 Indeed, Aldo Nardiello states that the decision to "end plaintiff's temporary assignment" was

18 made in part because "her role in her assigned project was coming to an end." Dkt. # 21 at 4.

19 Moreover, defendants have articulated a "legitimate, nondiscriminatory reason" for her

20

21  ───────────────────

22 [10] Furthermore, even assuming plaintiff *could* demonstrate a prima facie case of discrimination,
the Court finds that defendants have a "legitimate, nondiscriminatory reason" for replacing plaintiff.

23 *McDonnell Douglas*, 411 U.S at 802. Specifically, because Seattle City Light "was now primarily
responsible for funding the majority of the project, they selected a different employee to continue

24 managing it and made other program changes." Dkt. # 19 at 40. Plaintiff has failed to make any showing
that this explanation is a pretext for discrimination.

25
[11] Again, to the extent that plaintiff relies on declarations from Mr. Hill and Ms. Jones, neither

26 declaration provides any support for plaintiff's contention that she was discharged as a result of racial,
gender, or age discrimination. *See* Dkt. # 37; Dkt. # 38; *see also* Dkt. # 52 at 12-13 (Jones testifying in

27 her deposition that she could not opine whether or not plaintiff was subject to discrimination due to her
race, age or gender due to lack of personal knowledge).

28

1   termination. *McDonnell Douglas*, 411 U.S. at 802. Specifically, defendants point to plaintiff's
2   refusal to provide requested work product and take on assigned tasks, and her disrespectful and
3   inappropriate communications with supervisors. *See* Dkt. # 18 at 5-7. Plaintiff has failed to
4   make any showing that this explanation is a pretext for discrimination. Accordingly, the Court
5   finds that there is no genuine issue of material fact as to plaintiff's disparate treatment claim as it
6   relates to her termination. Summary judgment on this claim is granted to defendants.

7         The Court finds that – even viewing the facts in the light most favorable to the plaintiff –
8   plaintiff has failed to marshal the minimal amount of evidence required to make a prima facie
9   showing of disparate treatment. Accordingly, the Court grants defendants' motion for summary
10  judgment on plaintiff's disparate treatment claims under Title VII, WLAD and ADEA.

11                          **ii.  Hostile Work Environment**

12        The Court now turns to plaintiff's hostile work environment claims. Discrimination under
13  Title VII also "encompasses the creation of a hostile work environment." *Meritor Sav. Bank,*
14  *FSB v. Vinson*, 477 U.S. 57, 65 (1986) (Title VII guarantees "the right to work in an
15  environment free from discriminatory intimidation, ridicule, and insult"). "To prevail on a
16  hostile workplace claim premised on either race or [gender], a plaintiff must show: (1) that he
17  was subjected to verbal or physical conduct of a racial or [gender-based] nature; (2) that the
18  conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter
19  the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez*
20  *v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), *as amended* (Jan. 2, 2004). "Analysis
21  of a hostile work environment claim is identical under the ADEA and Title VII, except that the
22  harassment must be shown as motivated by age, rather than the protected classes enumerated in
23  Title VII." *Richardson v. Hilton Resorts Corp.*, No. C18-340LEK-RLP, 2019 WL 1440248, at
24  *4 (D. Haw. Mar. 29, 2019). The WLAD requires substantively the same showing. *See*
25  *Loeffelholz v. Univ. of Wash.*, 175 Wn. 2d 264, 275 (2012) (to establish a prima facie hostile
26  work environment claim, the plaintiff must allege facts proving that (1) the harassment was
27  unwelcome, (2) the harassment was because the plaintiff was a member of a protected class, (3)

28

1   the harassment affected the terms and conditions of employment, and (4) the harassment is

2   imputable to the employer).

3       Importantly, "[h]arassment is actionable only if it is sufficiently pervasive so as to alter

4   the conditions of employment and create an abusive working environment." *Alonso v. Qwest*

5   *Commc'ns Co., LLC*, 178 Wn. App. 734, 749 (2013) (citing *Antonius*, 153 Wn. 2d at 261);

6   *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir.2000) ("In order to prevail on her

7   hostile work environment claim, [a plaintiff] must show that her workplace was permeated with

8   discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of

9   her employment") (brackets, ellipses, and quotation marks omitted)). To determine whether

10  conduct was sufficiently severe or pervasive, the Court considers "all the circumstances,

11  including the frequency of the discriminatory conduct; its severity; whether it is physically

12  threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

13  with an employee's work performance." *Dominguez-Curry*, 424 F.3d at 1034 (citation omitted).

14  In addition, "[t]he working environment must both subjectively and objectively be perceived as

15  abusive." *Vasquez*, 349 F.3d at 642 (citation omitted); *see also Bauer v. Nat'l Data Funding*

16  *Corp.*, 95 Wn. App. 1004 (1999). Importantly, the Supreme Court has cautioned that "Title VII

17  [is] not . . . a general civility code," and therefore, "simple teasing, offhand comments, and

18  isolated incidents (unless extremely serious) will not amount to discriminatory changes in the

19  terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788

20  (1998) (citations and quotations omitted).

21      Here, plaintiff has failed to identify any unwelcome verbal or physical conduct she

22  received because of her age or gender. *See generally* Dkt. # 35. As to her hostile workplace

23  claims based on race, plaintiff contends that (1) she overheard a colleague state that the

24  colleague "doesn't take orders from Black people" in response to plaintiff's critique of the

25  colleague's allegedly unprofessional conduct during a client meeting; (2) plaintiff was told by

26  defendant Podwall she could no longer be the "face" of the Fusion project. *See* Dkt. # 35 at 2-5.

27  As to the comment made by Podwall, the Court is unconvinced that plaintiff was told she could

28  no longer be the "face" of the Fusion project because of her race. Referring to an individual as

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 17

1   the "face" of a project, company or team is a common idiom. Here, Podwall explained to the

2   HRIU Investigator that because Seattle City Light "was now primarily responsible for funding

3   the majority of the project, they selected a different employee to continue managing it and made

4   other program changes." Dkt. # 19 at 40. Plaintiff fails to provide any evidence to support her

5   subjective belief that Podwall's statement was in reference to her race.

6        Thus, plaintiff's hostile workplace claim rests on a single racially-motivated comment

7   made by a colleague.[12] While this comment was by no means acceptable, it was an isolated

8   incident and plaintiff testified that the colleague later apologized for her statements. *See* Dkt.

9   # 19 at 25. Plaintiff has failed to demonstrate an issue of material fact as to whether the alleged

10  harassment was "sufficiently pervasive so as to alter the conditions of employment and create an

11  abusive working environment." *Brooks*, 229 F.3d at 923. Accordingly, plaintiff's hostile

12  workplace claims based on her race, age and gender are dismissed. Summary judgment on these

13  claims is granted to defendants.

## B.  Violation of State & Municipal Whistleblower Protections

15       Defendants have also moved for summary judgment on plaintiff's claims alleging that

16  defendants violated both the Washington State Whistleblower Protection Act and the

17  whistleblower protections provided in the Seattle Municipal Code. *See* Dkt. # 1 at 12.

### i.  State Whistleblower Protection Act

19       Defendants argue that "[p]laintiff's claim under the State Employee Whistleblower

20  Protection Act is barred because Plaintiff was not a state employee." Dkt. # 18 at 20.

21  Specifically, the state whistleblower law provides that "[a]ny person who is a whistleblower, as

22  defined in RCW 42.40.020, and who has been subjected to workplace reprisal or retaliatory

23  action is presumed to have established a cause of action for the remedies provided" by the

24  

25       [12] While not raised in plaintiff's response, *see* Dkt. # 35, defendants note that in plaintiff's
26  deposition, she discussed an instance where she was not invited to see view photos of her supervisor's
    trip to South Africa, and her belief that she was not invited because the supervisor "would talk about
27  servants and things that they had while they were in South Africa." Dkt. # 19 at 58-59; *see also* Dkt.
    # 18 at 17-18. Given that plaintiff has offered only her own guess as to why she was not invited, the
28  Court finds that this event does not alter its analysis of plaintiff's hostile workplace claim.

statute. RCW 42.40.050(1)(a). "Whistleblower" is defined as "[a]n employee who in good faith reports alleged improper governmental action to the auditor or other public official" or "[a]n employee who is perceived by the employer as reporting, whether they did or not." RCW 42.40.020(10)(a). "Employee" is defined as "any individual employed or holding office in any department or agency of state government." RCW 42.40.020(2). Here, plaintiff not an employee of "any department or agency of state government," thus, she is not a protected whistleblower under the statute. Accordingly, plaintiff's claim under the Washington State Whistleblower Protection Act is dismissed, and summary judgment is granted to defendants on this claim.

## ii.  Local Government Whistleblower Protection Act

In addition to the State Whistleblower Protection Act, which provides a cause of action to state employees, "Chapter 42.41 RCW protects local government employees who disclose improper government actions. As part of those protections, local government officials and employees are prohibited from taking retaliatory action against whistle-blowers*." Woodbury v. City of Seattle*, 172 Wn. App. 747, 750 (2013) (citing RCW 42.41.040(1)). To seek relief, an aggrieved local government employee must provide written notice of the charge of retaliation to the local government's governing body. RCW 42.41.040(2). Then, upon receipt of the response of the local government, the employee "may request a hearing to establish that a retaliatory action occurred and to obtain appropriate relief." RCW 42.41.040(4). After receiving the request, the local government applies to the office of administrative hearings for a proceeding before an administrative law judge. RCW 42.41.040(5). The final decision of the administrative law judge is subject to judicial review under the arbitrary and capricious standard. RCW 42.41.040(9).

Chapter 42.41 RCW also grants local governments the authority to promulgate their own whistle-blower processes:

> Any local government that has adopted or adopts a program for reporting alleged improper governmental actions and adjudicating retaliation resulting from such reporting shall be exempt from this chapter if the program meets the intent of this chapter.

RCW 42.41.050. Seattle has promulgated such rules, and the Washington Court of Appeals has determined that "the procedures the City adopted allowing a whistle-blower to file a complaint and report improper governmental conduct with the City and request an administrative hearing [are] consistent with state law." *City of Seattle v. Swanson*, 193 Wn. App. 795, 814-815 (2016) (citing *Woodbury*, 172 Wn. App. at 751-52). Under Seattle's Municipal Code, "[i]n order to seek relief, an employee who believes he or she has been the subject of retaliation must file a signed written complaint within 180 days of when" the retaliation occurred. SMC 4.20.860(A). The complaint must be filed with the Seattle Ethics & Elections Commission ("SEEC") Executive Director. SMC 4.20.860(B). Notably, the Code further states that an employee may only pursue a private cause of action under the whistleblower protection provisions "after filing a timely and sufficient complaint with the Executive Director." SMC 4.20.870(A).

Here, plaintiff failed to file a complaint with the SEEC Executive Director. Plaintiff asserts only that she sent a meeting request to the Mayor's office, and that she was too fearful to file a complaint with the SEEC. *See* Dkt. # 19 at 34, 88. The SEEC further confirms that plaintiff never filed a signed, written complaint of whistleblower retaliation. Dkt. # 20 at 2. Because plaintiff has failed to follow the procedures articulated in both the state statute governing whistleblower protection for local governments, and the specific Seattle Municipal Code provisions, the Court finds that she does "not have the right to file a cause of action" in this Court. *Swanson*, 193 Wn. App. at 815. Accordingly, plaintiff's claim is dismissed and defendants' motion for summary judgment is granted.

## C. Wrongful Discharge

In addition to her claims under the state and local government's Whistleblower Protection Acts, plaintiff also states a claim for wrongful discharge, alleging that her whistleblowing was a "substantial factor" in defendant's decision to terminate her, "given the proximity in time to filing the complaint and her termination." Dkt. # 1 at 16.

Washington courts "have adopted the tort of wrongful discharge in violation of public policy as a narrow exception to the at-will doctrine."[13] *Martin v. Gonzaga Univ.*, 191 Wn. 2d 712, 722-23 (2018) (citing *Thompson v. St. Regis Paper Co.*, 102 Wn. 2d 219, 232-33 (1984)). The tort for wrongful discharge in violation of public policy has generally been limited to four scenarios, including where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing. *Id.* at 723 (citations and quotations omitted).

To prevail on a wrongful discharge claim, "[a] plaintiff must first establish a prima facie case by producing evidence that the public-policy-linked conduct was a cause of the firing, and may do so by circumstantial evidence." *Id.* at 725. "If the plaintiff succeeds in presenting a prima facie case, the burden then shifts to the employer to 'articulate a legitimate nonpretextual nonretaliatory reason for the discharge.'" *Id.* at 725-26 (quoting *Wilmot v. Kaiser Aluminum & Chemical Corp.*, 118 Wn. 2d 46, 70 (1991)). "If the employer articulates such a reason, the burden shifts back to the plaintiff either to show 'that the reason is pretextual, or by showing that although the employer's stated reason is legitimate, the [public-policy-linked conduct] was nevertheless a substantial factor motivating the employer to discharge the worker.'" *Id.* at 726 (quoting *Wilmot*, 118 Wn. 2d at 73).

In plaintiff's response to defendants' motion for summary judgement, she alleges that during the course of her employment, she "discovered that Defendant Seattle City Light had a

---

[13] Plaintiff dedicates much of her response brief to arguing that she was not, in fact, an at will employee at the time she was terminated. *See* Dkt. # 35 at 8-9. Defendants dispute this allegation. *See* Dkt. # 51 at 8-9. Ultimately, the Court need not resolve this issue as plaintiff has failed to explain why her at-will status is relevant to any of her claims. The Washington State Supreme Court has held that the existence of alternative remedies for wrongful discharge does not prevent a plaintiff from bringing a claim under the common law tort of wrongful discharge. *See Rose v. Anderson Hay & Grain Co.*, 184 Wn. 2d 268 (2015). And plaintiff neither can nor does assert a claim that defendants violated the terms of the collective bargaining agreement she claims governed her position. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [their] complaint through argument in a brief opposing summary judgment."); *Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006) (explaining that a plaintiff could not assert new grounds for her claim for the first time in opposition to summary judgment, because "the complaint gave [defendants] no notice of th[ose] specific factual allegations").

significant issue with its meters that was reported in the DEIEN Lawsuit." Dkt. # 35 at 16.[14]

Specifically, plaintiff "alleges that approximately 350,000 Seattle City Light customers were

over billed for nearly six years." *Id.* Plaintiff claims that she "reported this information to her

superiors and to Human Resources who in turn told Plaintiff she was in a protected status as a

whistleblower," *id.* (citing Exhibit 12), and she "filed an official whistleblower complaint in

April of 2021," *id.*[15]

As an initial matter, plaintiff has failed to produce any evidence supporting her claim that

she reported her discovery to her supervisors or filed an "official whistleblower complaint."

Plaintiff directs the Court to Exhibit 12, *see* Dkt. # 35 at 16, but Exhibit 12 is a declaration from

human resources representative Seini Puloka that does not discuss plaintiff's alleged

---

[14] "*Deien v. Seattle City Light*, King County Superior Court Case No. 19-2-21999-8 SEA, was a class action lawsuit filed in August 2019 by an SCL customer." Dkt. # 18 at 24. "The Complaint alleged that SCL implemented a new automated meter-reading system in approximately 2016, but that the system did not read meters accurately and sometimes, did not read them at all." *Id.* The *Deien* plaintiffs further alleged that "in anticipation of the new system, SCL laid off many meter readers, and so did not have the resources to accurately read meters" and "that SCL billed customers using estimates." *Id.* The case settled in September 2021. Dkt. # 19 at 111.

[15] Plaintiff also asserts, without offering any citation to the record, that she "reported an incident of witness tampering committed by defendant Britt Luzzi, who is not an attorney, whereby Plaintiff witnessed the Defendant bring witnesses into a room and overheard the Defendant instructing witnesses how to testify in the DEIEN et Al [sic] case." Dkt. # 18 at 14. Plaintiff has not offered any evidence to support her claim that this "witness tampering" actually took place, or that plaintiff reported it. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). Furthermore, plaintiff makes no claim that her supervisors were aware of her alleged report, nor does she provide any evidence indicating that her supervisors were aware. *See* Dkt. # 18 at 14. Accordingly, plaintiff cannot show that her alleged reporting was a "substantial factor" in her discharge, and cannot demonstrate a prima facie case.

Similarly, defendants note that in plaintiff's deposition, she alleged that she had also made whistleblowing reports regarding her colleagues purposefully slowing down projects, which she asserted amounted to theft of federal funds, and regarding "SCL's purported plan to teach constituents to use less electricity and then sell that excess electricity to the state of California." Dkt. # 18 at 22-24. Plaintiff does not raise these claims in her response. *See* Dkt. # 35. Even if plaintiff had raised these claims in her response, the Court's conclusion would remain the same. Plaintiff has failed to provide any evidence that she actually made any whistleblower reports, much less that her supervisors were aware of any alleged report she made.

1   whistleblowing. *See* Dkt. # 36 at 94-96. Given plaintiff's reference to her "protected status,"

2   Dkt. # 35 at 16, the Court presumes that plaintiff intended to direct it to Exhibit 21B, which

3   outlines the City's policy of non-retaliation. *See* Dkt. # 36 at 152-55. Specifically, the City "does

4   not tolerate retaliation of any kind against an individual who participates in the complaint

5   process." *Id.* at 154. However, this information regarding the City's non-retaliation policy was

6   given to plaintiff as part of the packet of information provided by Sonia Johnson, an HRIU

7   investigator, following plaintiff's complaints regarding Sharon Hunter. *See* Dkt. # 19 at 38-42.

8   Plaintiff has not produced any evidence indicating that her concerns about potential overbilling

9   by Seattle City Light was included in this complaint. Thus, while it appears that the City's

10  policy operates to protect plaintiff from retaliation related to the human resources complaint she

11  filed against Sharon Hunter and others, this "protected status" has no relation to plaintiff's

12  alleged whistleblowing activity.

13       Similarly, plaintiff directs the Court to the declaration of Ed Hill as evidence that plaintiff

14  was "retaliated against once she filed her Whistleblower Complaint." Dkt. # 35 at 17. However,

15  Mr. Hill's declaration discusses the HRIU investigation, describing it as focusing on plaintiff's

16  concerns that she was "working in several job classifications different than the one she was

17  hired into." Dkt. # 39 at 2. Nowhere in Mr. Hill's declaration does he provide support for

18  plaintiff's contention that she filed a complaint regarding the alleged overbilling by Seattle City

19  Light. *See generally* Dkt. # 39. Finally, plaintiff also directs the Court to the declaration of

20  Monica Jones. *See* Dkt. # 35 at 17-18. However, Ms. Jones's declaration similarly discusses the

21  HRIU investigation into plaintiff's discrimination claims, and does not address or provide

22  support for plaintiff's claim that she filed a whistleblower complaint. *See generally* Dkt. # 38.[16]

23

24

25       [16] Additionally, while plaintiff does not raise this argument in her response, and thus the Court

26  need not consider it, *see* Fed. R. Civ. P. 56(c)(3), the Court also notes that plaintiff's assertions that she
    contacted the Mayor's office in an attempt to file her whistleblower complaint are similarly unavailing.

27  Plaintiff's only support for this contention is an "auto-generated email originating from an unmonitored
    email account" which confirms only that she submitted a "meeting request" to the Mayor's Office titled

28  "Whistleblower Meeting." Dkt. # 36 at 108. Plaintiff provides no evidence that she actually met with

    ORDER GRANTING DEFENDANTS' MOTION FOR
    SUMMARY JUDGMENT - 23

1    In light of the fact that plaintiff has failed to demonstrate that she reported her alleged

2  discovery, or that her supervisors were aware of her alleged whistleblower complaint at the time

3  of her termination, the Court finds that plaintiff has failed to "produce evidence that the public-

4  policy-linked conduct was a cause of the firing," and accordingly has failed to demonstrate a

5  prima facie case for wrongful discharge. Furthermore, even if plaintiff *could* demonstrate a

6  prima facie case, the Court finds that defendants have articulated a legitimate nonpretextual

7  nonretaliatory reason for the discharge. As defendants note, "[i]n the months leading up to her

8  termination, plaintiff was disrespectful and unprofessional to her supervisors on multiple

9  occasions, even after being coached on adhering to workplace expectations. Plaintiff also

10  refused to perform work that her supervisors delegated to her." Dkt. # 18 at 26. Washington

11  Courts have consistently found that "insubordination and inadequate job performance" are

12  legitimate reasons for dismissal. *See Martin*, 191 Wn.2d at 726. As discussed above, plaintiff

13  has failed to show that her alleged whistleblowing was a significant factor in her termination,

14  and thus cannot overcome the burden of showing that defendants' reasons are pretextual. The

15  Court grants summary judgment to defendants on plaintiff's wrongful discharge claim.

16    **i. Motion to Compel**

17    Alongside their motion for summary judgment, defendants have also filed a "Motion to

18  Compel Re. Package of Information Evidencing Plaintiff's Whistleblowing Claims" (Dkt. # 29).

19  Specifically, defendants seek the identity of certain "federal attorneys" whom plaintiff claims

20  she sent "a package of evidence regarding her whistleblowing claim," as well as the evidence

21  contained therein. *See* Dkt. # 29.

22    As background, plaintiff participated in two full days of depositions for discovery in this

23  case, taking place on May 22, 2023 and July 7, 2023. Dkt. # 27 at 1-2. On the second day of her

24  deposition, plaintiff "revealed for the first time that a package of evidence regarding her

25  whistleblowing claim is in the hands of a third party. This was not disclosed in Plaintiff's initial

26

27    anyone in the Mayor's office, made any sort of report, or that any report she might have made to the

28  Mayor's office was shared with the employees responsible for her termination.

1   disclosures and was not disclosed in response to similar questioning during the first day of
2   Plaintiff's deposition on May 22, 2023." *Id.* Plaintiff asserted that she had sent a packet of
3   evidence regarding the alleged improper meter reading to "federal attorneys" who were
4   "colleagues," and that she had deleted her own copies of the evidence. *See* Dkt. # 32-1 at 9-26.
5   Plaintiff was asked multiple times by defense counsel to identify these federal attorney
6   colleagues, but refused to do so in her deposition. *Id.*

7       Following an unsuccessful discovery conference, defendants filed the instant motion to
8   "compel Plaintiff to provide the names of the individuals who currently have the package of
9   information, and also to produce the information." Dkt. # 29 at 1-2. Plaintiff submitted a late-
10  filed response, arguing that the Court should deny the motion to compel "[i]n light of the
11  Plaintiff's legitimate fear for her life and the potential risks associated with disclosing certain
12  information." Dkt. # 50 at 4.

13      Because the Court has granted summary judgment to defendants on plaintiff's
14  whistleblowing claims, the Court denies defendants' motion to compel as moot.

15                    **D. Negligent Retention and Supervision**

16      Finally, in her Complaint, plaintiff asserted a claim of negligent retention and supervision
17  against defendants. *See* Dkt. # 1 at 14. Defendants argue that these claims should be dismissed
18  on summary judgment as plaintiff claimed in her deposition that she was the only employee who
19  was negligently supervised. *See* Dkt. # 18 at 26 (citing Dkt. # 19 at 64-66). Defendants also note
20  that "[t]o establish negligent supervision, the plaintiff must prove that: (1) an employee acted
21  outside the scope of his employment," *id.* (citing *Briggs v. Nova Servs.*, 135 Wn. App. 955, 966-
22  67 (2006)), and here, plaintiff "note[s] in her Complaint that the individual defendants' actions
23  are within the scope of their employment, *id.* (citing Dkt. # 1 at 6).

24      Plaintiff fails to address defendants' arguments in her response, *see generally* Dkt. # 35,
25  and has therefore failed to resist the motion by "set[ting] forth specific facts showing that there
26  is a genuine issue for trial." *Anderson*, 477 U.S. at 256; *see also John-Charles v. California*, 646
27  F.3d 1243, 1247 n.4 (9th Cir. 2011) (deeming issue waived where party "failed to develop any
28  argument"); *City of Arcadia v. EPA*, 265 F. Supp. 2d 1142, 1154 n.16 (N.D. Cal. 2003) ("[T]he

1   implication of this lack of response is that any opposition to this argument is waived.").

2   Accordingly, the Court grants defendants' motion for summary judgment as to plaintiff's

3   negligent retention and supervision claims.

4       **IV.     Conclusion**

5       For all the foregoing reasons, defendants' motion for summary judgment (Dkt. # 18) is

6   GRANTED. The Clerk of Court is directed to enter judgment for defendants and against

7   plaintiff.  Defendants' motion to compel (Dkt. #29), motion for leave to file a motion to dismiss

8   (Dkt. # 60), and motion to dismiss (Dkt. # 61) are DENIED AS MOOT.

9       IT IS SO ORDERED.

10

11      DATED this 5th day of October, 2023.

12

13

14                          Robert S. Lasnik
                            United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 26